```
            IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
SUSAN ENSKO
                                *
      Plaintiff,
v.                              *      CIVIL NO.: WDQ-04-3464

HOWARD COUNTY, MARYLAND,        *
et al.
                                *
      Defendants.
                                *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

Susan Ensko has sued Howard County, Maryland (the "County") and G. Wayne Livesay, Chief of the Howard County Police Department ("HCPD"), for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.,* and 42 U.S.C. § 1983.[1]  Pending is the County's and Chief Livesay's motion for summary judgment.  Also pending is Ensko's motion to seal her Opposition to Defendants' motion for summary judgment and Defendants' motion to seal their Reply.  For the following reasons, Defendants' motion for summary judgment will be denied.  The motions to seal will be granted.

---

[1] Ensko originally sued the County and Chief Livesay under Title VII and § 1983.  As her Title VII claim against Chief Livesay has been dismissed, she proceeds against him solely under § 1983.

1

I.  Background

    Susan Ensko is a 17 year veteran of the HCPD.  She has
alleged that over the course of her career she has been subjected
to disparate treatment and a hostile work environment by fellow
officers and supervisors who displayed pornography in the
workplace, repeatedly made sexually explicit comments, and
disparaged women and female police officers.  Complaint, ¶ 18-20,
33-37.  Ensko has also alleged that she was retaliated against
after complaining of harassment and participating in another
officer's discrimination suit.  Complaint, ¶ 24-47.

    Defendants have moved for summary judgment arguing that: 1)
Ensko cannot prove a hostile work environment, retaliation or
that the HCPD had a policy or custom of harassment; 2) there is
no basis for § 1983 liability for Chief Livesay; 3) Chief Livesay
is entitled to qualified immunity; 4) Ensko's claims are barred
by limitations, laches, estoppel and waiver; and 5) the County
has established the *Faragher* affirmative defense.


II.  Legal Discussion

A.  Standard of Review

    Under Rule 56(c), summary judgment is appropriate when there
is no genuine issue of material fact, and the moving party is
entitled to judgment as a matter of law.  *Celotex Corp. v.
Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material

2

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the opposing party must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.


B.  Title VII Claims

1.  Hostile Work Environment Claim

In Count I of her complaint, Ensko alleges discrimination and retaliation in violation of Title VII.  Under Title VII, it is unlawful for an employer to discriminate with respect to compensation, terms, conditions, or privileges of employment on

the basis of sex.  42 U.S.C. § 2000e-2(a).  Conduct that creates a hostile or abusive work environment constitutes sex discrimination in violation of Title VII.  *Harris v. Forklift Systems, Inc.,* 510 U.S. 17 (1993); *Meritor Savings Bank v. Vinson,* 477 U.S. 57 (1986); *Ocheltree v. Scollon Productions, Inc.,* 335 F.3d 325, 331 (4th Cir. 2003).

To prove a hostile work environment, the plaintiff must show: 1) that she was harassed because of her sex; 2) the harassment was unwelcome; 3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and 4) some basis exists for imputing liability to the employer. *Ocheltree,* 335 F.3d 325; *Hartsell v. Duplex Prods., Inc.*, 123 F,3d 766, 772 (4th Cir. 1997).

Defendants argue that Ensko cannot prove a hostile work environment because the conduct she complains of was not directed at her because of her sex, cannot be attributed to her employer, and was neither severe nor pervasive.

a.  Harassment Because of Ensko's Sex

An employee can show that she was harassed because of her gender if "but for the employee's gender, he or she would not have been the victim of discrimination." *Smith v. First Union,* 202 F.3d 234 (4th Cir. 2000); *see also Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75 (1998); *Ocheltree,* 335 F.3d

4

at 331.   Sexually explicit comments, derogatory references to women, and conduct intended to objectify women are evidence that a plaintiff was harassed because of her gender.   *Miller v. Washington Workplace, Inc.,* 298 F.Supp.2d 364 (E.D.Va. 2004); *see also Ocheltree,* 335 F.3d 325; *Smith,* 202 F.3d 234.

Ensko has alleged that between 1991 and 1998 she was subjected to comments that pregnancy "was another reason women shouldn't be cops", a lecture from her supervisor about having multiple sex partners, and comments about another officer's sexual preferences.   Plaint. Ans. to Interrogatory No. 1 and Attached Chronology, ¶¶ 1-3.   Between 2000 and 2001, while assigned to Sergeant Bill Donahue's squad, Ensko alleges that she was subjected to: 1) repeated, sexually explicit comments from Officer Perry Sauers; 2) frequent comments about "bull roasts" attended by HCPD officers (including Ensko's supervisor, Sergeant Donahue) that involved prostitutes; and 3) conversations about pornography and pornography in the workplace.   *Id* at ¶¶ 4-20. Between 2001 and 2004, Ensko contends that she found pornography in her office and on office computers and was subjected to comments from her supervisor, Sergeant Paul Steppe, suggesting that Ensko and another female officer had a sexual relationship. *Id* at 24-29.   As this alleged conduct has the effect of demeaning and objectifying women, there is a sufficient showing that the conduct complained of was because of Officer Ensko's gender.

5

b.   Severity of the Harassment

A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment..." *Harris,* 510 U.S. at 21.   Whether conduct constitutes a hostile work environment depends on the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a merely offensive utterance, and whether it unreasonably interferes with an employee's work performance.   *Id* at 23.   This determination, however, is "quintessentially a question of fact" for the jury.   *Beardsley v. Webb,* 30 F.3d 524 (4th Cir. 1994); *Paroline v. Unisys Corporation,* 879 F.2d 100 (4th Cir. 1989), *vacated in part on other grounds* 900 F.2d 27 (4th Cir. 1990)(en banc).

Although occurring over 15 years, the conduct described above was, at times, frequent, highly offensive and engaged in by multiple members of the HCPD including Ensko's supervisors. Taking these facts as true and drawing inferences in favor of the plaintiff, there is a genuine issue whether the alleged conduct created a hostile work environment.

c.   Imputing Liability to the HCPD

An employer may be found vicariously liable for the harassment of an employee by her supervisor.   *Burlington*

6

*Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998); *Ocheltree,* 335 F.3d at 334.  In a case of harassment by a coworker, an employer may be held liable if it "knew or should have known of the harassment, and took no effectual action to correct the situation." *Spicer v. Commonwealth of Virginia Dept. of Corrections,* 66 F.3d 705, 710 (4th Cir. 1995); *see also Ocheltree,* 335 F.3d *at 334; Lyle v. ESPN Zone,* 292 F.Supp.2d 758 (D.Md. 2003).  Knowledge of work place harassment may be imputed to an employer by circumstantial evidence if the conduct is so pervasive that a reasonable employer would have been aware of it. *Spicer,* 66 F.3d at 710.

Between 2001 and 2005, Ensko complained of harassment to her supervisors, Captain Ferguson and Lt. Lessner, investigators from the department's Internal Affairs Division (IAD), and Chief Livesay.  Therefore, a jury could reasonably find that the HCPD was aware of the harassment.  In addition, Ensko has alleged that she was harassed by her supervisor, Sergeant Steppe, for whom the HCPD may be vicariously liable.  Accordingly, there is a genuine issue whether liability should be imputed to the HCPD.

d.  Conclusion

For the reasons stated above, Defendants' motion for summary judgment on the grounds that Ensko failed to establish a *prima facie* case of harassment will be denied.

2.  Retaliation Claim

Ensko has also alleged that she was retaliated against because of her complaints of harassment and participation in Linda Freeman's discrimination suit.  Defendants argue that despite her allegations, Ensko did not suffer an adverse employment action.  Ensko argues that she suffered an adverse action when Defendants maintained and reinforced a hostile work environment as a result of her protected activity.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: 1) she engaged in a protected activity; 2) her employer took an adverse employment action against her; and 3) a causal connection existed between the protected activity and the adverse action.  *Honor v. Booz-Allen Hamilton, Inc.,* 383 F.3d 180 (4th Cir. 2004); *Mackey v. Shalala,* 360 F.3d 463 (4th Cir. 2004); *Laughlin v. Metropolitan Washington Airports,* 149 F.3d 253 (4th Cir. 1998).  An adverse employment action is "any retaliatory act or harassment if that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment."  *Honor,* 383 F.3d at 188; *Von Gunten v. Maryland,* 243 F.3d 858, 865 (4th Cir. 2001).

Retaliatory harassment that creates a hostile work environment can constitute an adverse employment action, but "only if such harassment adversely affects the terms, conditions, or benefits of...employment."  *Von Gunten,* 243 F.3d at 869-870.

8

Ensko argues that the HCPD created such an environment when: 1) Officer Sauers tried to expose her as an informant about the HCPD "bull roasts"; 2) fellow officers labeled her a "snitch"; 3) Sergeant Donahue, Ensko's supervisor and a participant in the "bull roasts," called her at home to say that he had been assigned to investigate her allegations; 4) Officer Sauers was assigned to Ensko's shift while her complaints about his behavior were being investigated; 5) Sergeant Steppe transferred Ensko from her regular patrol assignment to a less desirable "float car;" 6) Ensko was denied a position at the Maryland Coordination and Analysis Center ("MCAC"); 7) Ensko was assigned to a light duty position on the night shift when day shift assignments were available; and 8) Chief Livesay's son Troy Livesay, a civilian, was assigned to work in the same office as Ensko and later made unsubstantiated complaints about her work performance.  Plaint. Ans. to Interrogatory No. 1 and Attached Chronology.

Taken together, this evidence may well convince a jury that Defendants created a hostile work environment that changed the conditions of Ensko's employment.

Assuming that the MCAC position was a promotion (which Defendants do not concede), Ensko's allegation that she was denied the position because of her complaints, if true, would constitute an adverse employment action.  *Von Gunten,* 243 F.3d 858.  Defendants argue, however, that Ensko was not selected for

the position because she was dressed unprofessionally for the interview, provided brief answers to questions asked, and did poorly in a mock briefing exercise.  McKissick Memorandum dated March 4, 2004.  Defendants further argue that there is no evidence that the interviewers for the MCAC position were aware of Ensko's protected activities.  As Ensko has provided no evidence that the interviewers were aware of her complaints or that the HCPD's proffered explanation was a pretext for discrimination, her non-selection for the MCAC position was not an adverse employment action.

As Ensko has offered evidence that she suffered an adverse employment action as a result of her protected activities, Defendants' motion for summary judgment on her retaliation claims will be denied.


C.  Section 1983 Claims

In Count II of her complaint, Ensko has alleged sex discrimination and retaliation by the HCPD and Chief Livesay in violation of her Fourteenth Amendment Rights and § 1983.

Defendants have moved for summary judgment on Count II arguing that Ensko has failed to show that her injuries were the result of a policy or custom of harassment within the HCPD and that Chief Livesay cannot be held liable under § 1983 because he was not the final policymaking authority for personnel issues.

Under § 1983, municipalities cannot be held liable for the constitutional violations of their employees merely because of the employment relationship. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978); *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir. 1987); *Jones v. Ziegler,* 894 F.Supp. 880 (D.Md. 1995). Liability may apply, however, when municipal policy or custom inflicts the violations. *Monell,* 436 U.S. 658; *Spell,* 824 F.2d 1380; *Ziegler,* 894 F.Supp. 880.

Municipal policies include formal and informal decisions made by municipal officials authorized to make final decisions. *Castle v. Wolford*, 165 F.3d 17 (4th Cir. 1998); *Spell,* 824 F.2d at 1387. Municipal customs are established by persistent, widespread practices of municipal officials, whether specifically authorized or not, which are so permanent and well settled as to have the force of law. *Castle*, 165 F.3d 17. Constructive knowledge of such a custom can be inferred from the "widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed...." *Randall v. Prince George's County, Md*. 302 F.3d 188 (4th Cir. 2002).


1. Claims Against the County

As noted above, Ensko has offered evidence that she was repeatedly harassed over the course of her 17 year career and

11

that she repeatedly complained of this harassment to her
supervisors and the IAD.  She has also offered the deposition
testimony of Norma Hurley and Linda Freeman, HCPD officers who
complained of similar harassment by fellow officers.  Hurley
Dep.; Freeman Dep.

As Ensko has offered evidence of harassment over an extended
period, by multiple HCPD officers and, as she and other female
officers have repeatedly complained to their supervisors of the
harassment, there is a genuine issue whether such harassment was
so widespread as to be a policy or custom of the HCPD.

2.  Claims Against Chief Livesay

Ensko has brought suit against Chief Livesay in his
individual and official capacity.  Livesay has moved for summary
judgment arguing that he had no prior knowledge of the alleged
harassment and that he took appropriate action when he learned of
the abuse.

Although there is no *respondeat superior* liability under §
1983, supervisory officials may be held liable for the
constitutional violations of their employees if their
indifference or tacit authorization of subordinates' misconduct
caused injury.  *Mikkelsen v. DeWitt,* 141 Fed. Appx 88, slip op.
(4th Cir. 2005); *Randall v. Prince George's County,* 302 F.3d 188
(4th Cir. 2002); *Shaw v. Stroud,* 13 F.3d 791 (4th Cir. 1994).

Liability is determined by "pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Shaw,* 13 F.3d at 798 (quoting *Slakan v. Porter,* 737 F.2d 368 (4th Cir. 1984)). The issue is ordinarily one of fact, not law. *Id* at 799.

To establish supervisor liability under § 1983 a plaintiff must show: 1) that the supervisor had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; 2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference or tacit authorization of the conduct; and 3) that the supervisor's inaction caused the plaintiff's constitutional injury. *Shaw,* 13 F.3d at 799.

As noted above, Ensko repeatedly complained of harassment to her immediate supervisors and the IAD.  In October, 2003 she personally discussed her complaints with Chief Livesay.  Chief Livesay has acknowledged that he was aware of Linda Freeman's complaint of harassment and the IAD investigations into Donahue's and Sauer's conduct.  Livesay Dep., p. 59-61, 102-103. Accordingly, there is evidence that Chief Livesay had knowledge of harassment within the HCPD.

Ensko has also alleged that Livesay failed to act despite his knowledge of the harassment.  Although Livesay asserts that

he responded appropriately, Ensko has provided evidence that, despite her complaints (and those of Linda Freeman): 1) the harassment continued; 2) no action was taken against Sauers; 3) she and Sauers were later assigned to the same shift; 4) Sergeant Donahue was demoted, but not dismissed from the HCPD; and 5) Steppe was charged with misconduct, but no disciplinary action has been taken to date.  Livesay Dep. P. 81-84, 288-289, 341-343; Donahue IAD Report.  Ensko argues that this inaction constituted deliberate indifference which resulted in her continued harassment.

Drawing inferences in Ensko's favor, there is an issue whether this response was deliberate indifference.  Accordingly, Defendants' motion for summary judgment on Ensko's § 1983 claims against Livesay will be denied.

D.  Qualified Immunity

Livesay seeks summary judgment on the ground that as a high ranking public official, he is entitled to qualified immunity.

Under the doctrine of qualified immunity, government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Kwarteng*

*v. Morgan State University*, 128 Fed.Appx. 301, slip op. (4th Cir.
2005).  As noted above, there is a genuine issue whether Chief
Livesay condoned Ensko's harassment.  If true, such conduct
violated a clearly established statutory right; there is a
genuine issue whether Livesay is entitled to qualified immunity.
Accordingly, Livesay's motion for summary judgment on this ground
will be denied.


E.  Limitations

    Defendants argue that in deciding whether to grant summary
judgment, the Court may consider only evidence of events that
occurred within 300 days of the filing of Ensko's EEOC complaint
(which was filed on December 12, 2003).

    Although generally, under Title VII, a court may consider
only evidence of events that occurred within the limitation
period, a plaintiff may recover for older acts as long as a
portion of the hostile work environment occurred within the 300
days.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101
(2002); *White v. BFI Waste Services, LLC*, 375 F.3d 288 (4th Cir.
2004).  Similarly, courts in this circuit have applied the
continuing violation doctrine to § 1983 cases.  *Jennings v.
University of North Carolina at Chapel Hill*, 240 F.Supp.2d 492
(M.D.N.C. 2002); *Douglas v. Dabney S. Lancaster Community
College,* 990 F.Supp. 447 (W.D.Va. 1997).

In support of her claim of a hostile work environment, Ensko has offered evidence that she was harassed between 1991 and 2005. Ensko's allegations of pornography in the workplace and harassment by Steppe occurred within the 300 day limitation period.  Although Ensko has offered evidence of events outside of the limitation period involving different HCPD officers, while on a variety of different assignments, the events all relate to her claim that she faced a hostile work environment because of harassment by her supervisors and fellow officers.  Accordingly, the Court has considered evidence of events that occurred outside of limitation period.

F.  Laches, Estoppel and Waiver

Defendants argue that the Court should decline to consider events outside the Title VII and § 1983's limitation periods on equitable principles because of Ensko's unreasonable delay in filing suit and the resulting prejudice to Defendants.

As Ensko repeatedly complained of harassing conduct to her supervisors, IAD, and Chief Livesay before bringing suit, Ensko's delay was not unreasonable.  Additionally, although Defendants may have some difficulty in finding witnesses to certain events now 15 years in the past, most of the complained of conduct occurred within two or three years of the filing of Ensko's EEOC complaint.  As a result, the Court finds insufficient prejudice

to bar consideration of evidence outside the limitations period.

G.   *Faragher* Defense

Defendants further argue for summary judgment under *Faragher v. City of Boca Raton* and *Burlington Industries, Inc. v. Ellerth*. *Faragher,* 524 U.S. 775 (1998); *Ellerth,* 524 U.S. 742 (1998). Under *Faragher*, an employer can avoid vicarious liability for the victim's supervisors when no tangible employment action was taken against the plaintiff and: 1) the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  *Faragher,* 524 U.S. at 777-778.

Ensko, however, has alleged that a hostile work environment was created by supervisors and co-workers.  In addition, although there is some question as to whether Ensko sought all the remedies of the HCPD's sexual harassment policy, Ensko repeatedly complained to her supervisors and to IAD about the harassing conduct and sought transfers out of assignments where she was subjected to harassment.  As a result, the Defendants have not established that Ensko failed to take corrective action or avoid the harm.  Accordingly, the Defendants' motion for summary judgment on the  basis of the *Faragher* defense will be denied.

17

H.   Conclusion

     For the reasons stated above Defendants' motion for summary
judgment will be denied.


III.  Motions to Seal

     Ensko has moved to seal her Opposition to Defendants motion
for summary judgment.   Defendants have moved to seal their Reply.
As these motions are unopposed, they will be granted.


<u>March 22, 2006</u>                     _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge

18